# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

JERRY L. SKINNER,

    Plaintiff,

vs.                                    CASE NO. CV-11-J-3626-E

NATIONAL ELECTRICAL BENEFIT
FUND,

    Defendant.

## MEMORANDUM OPINION

Pending before the court is the plaintiff's motion for partial summary judgment and memorandum in support of said motion (docs. 17 and 18), the defendant's cross motion for summary judgment (doc. 16), the defendant's memorandum in opposition to the plaintiff's motion (doc. 19), the plaintiff's memorandum in opposition to defendant's motion for summary judgment and evidence in support (docs. 20 and 21), and the parties' respective replies (docs. 22 and 23).

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), asserting that the defendant wrongfully denied him retirement benefits from April 2005 until May 2012. The parties agree that the that the National Electrical Benefit Fund ("NEBF") is a "plan" as that term is defined by ERISA, and

that the plaintiff was vested for retirement benefits under the plan as of April 2005.[1] The sole dispute before the court is whether the plaintiff was "retired from the electrical industry," at the time he first applied for benefits.

## FACTUAL BACKGROUND

The underlying facts of this case are not in dispute. The plaintiff worked in NEBF covered employment sufficient to become 100% invested the fund. *See* NEBF0011. In April 2005, the plaintiff submitted a pension application to the NEBF to begin receiving retirement benefits. NEBF0013-0014. In July 2005, the plaintiff was informed that his pension effective date was April 2005. NEBF0026. However, in August 2005 the plaintiff was informed that his pension benefits would not begin because he was still performing work in the electrical trade.[2] NEBF0029. The plaintiff responded that he had not worked in the electrical trade since February 2000. NEBF0030. In October 2005 NEBF notified the plaintiff that it considered his job

---

[1]The NEBF is a multi-employer, defined benefit pension plan that provides retirement and other benefits to employees in the electrical industry. All contributions come from employers which either have collective bargaining agreements with the International Brotherhood of Electrical Workers, or have signed a participation agreement with NEBF. NEBF Summary Plan Description 2006 (submitted as doc. 13-1), at 1.

[2]Under ERISA, pension plans must provide that "an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." 29 U.S.C. § 1053(a). However, multiemployer plans may condition benefits on an employee's promise not to engage in certain kinds of employment after retirement. If a retiree returns to work "in the same industry, in the same trade or craft, and the same geographic area covered by the plan," ERISA allows the retiree's benefits to be suspended for as long as he remains in that employment. *Id.* § 1053(a)(3)(B)(ii). The parties do not dispute that the plan at issue complies with this section of ERISA.

classification to be an electrical engineer, hence his current employment maintaining fire protection systems was within the electrical industry, and therefore his benefits would not begin until he retired from that employment. NEBF0031. The plaintiff appealed this decision, and in August 2006 the NEBF denied plaintiff's appeal. NEBF0038-0039. Specifically, the Trustees found that plaintiff's current employment, providing technical assistance on fire protection systems, is work "within the electrical field." *Id.*

The plaintiff disputed, and still disputes, NEBF's classification of his employment from 2000 forward as "work within the electrical trade" and asserts that he was a system engineer, providing technical assistance and advice to the maintenance department. NEBF0033. He alleges his duties were administrative and he was not taking any job from an electrical union member. *Id*.

In September 2007 the plaintiff notified defendant that he was going to be 70 ½ years old and believed he was required to take a mandatory distribution of his retirement benefits regardless of whether he was still working. NEBT0043. NEBF responded that he was still working and therefore still ineligible for benefits. NEBF0044. The plaintiff has since retired and his NEBF pension benefits began in May 2012.

Thus, the sole dispute before the court is whether the plaintiff was working within the electrical trade from 2000 until his retirement in 2012. The NEBF is the Plan Administrator for purposes of this dispute, and the Plan gives the Trustees of the NEBF discretionary authority to interpret the Plan and review claims. NEBF0088-89. The parties also agree that the Plan does not define working "within the electrical trade."

## STANDARD OF REVIEW

ERISA itself provides no standards for evaluating a plan administrator's determination. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Therefore, the Eleventh Circuit Court of Appeals has set out the following steps to apply in reviewing "virtually all ERISA-plan benefit denials:"

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

>(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
>(5) If there is no conflict, then end the inquiry and affirm the decision.
>
>(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*White v. Coca-Cola Co.,* 542 F.3d 848, 853-854 (11th Cir.2008); citing *Williams v. BellSouth Telecommunications, Inc.,* 373 F.3d 1132, 1137-38 (11th Cir.2004). The sixth step of this analysis, requiring a "heightened review," was altered by *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct.2343, 171 L.Ed.2d 299 (2008), where the Court ruled that the existence of a conflict of interest is "a factor" in determining whether there is an abuse of discretion. *Id.*, 128 S.Ct. at 2347. Thus, the Eleventh Circuit altered the guidelines with the instruction that "the existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Doyle v. Liberty Life Assurance Company of Boston*, 542 F.3d 1352, 1360 (11th Cir.2008). The "burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Id.*

In considering the plan administrator's denial of benefits, the court is limited to consideration of the material available to the administrator at the time it made its decision. *Blankenship v. Metropolitan Life Ins. Co.,* 644 F.3d 1350, 1354 (11th Cir.2011); citing *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir.1989).

## LEGAL ANALYSIS

The issue before the court is whether the factual finding of the defendant, namely that plaintiff's work as a systems engineer is work "within the electrical industry," is correct. As a fiduciary, the defendant must administer the Plan "for the exclusive purpose of ... providing benefits to participants and their beneficiaries" and "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(A)(i), (D). The defendant must also provide a "full and fair review" of claim denials. *Id*. § 1133(2).

As set forth above, the court turns to the steps set forth by the Eleventh Circuit in reviewing an ERISA benefits decision.

> *(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.*

The court must first evaluate the claims administrator's interpretation of the plan to determine whether it is "wrong." *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir.2008). A decision is "wrong" if, after a review of the decision of the administrator from a *de novo* perspective, "the court disagrees with the administrator's decision." *Id.*, *citing Williams v. BellSouth Telecomms., Inc.,* 373 F.3d 1132, 1138 & n. 8 (11th Cir.2004). *See also Jett v. Blue Cross & Blue Shield of Ala.*, 890 F.2d 1137, 1139 (11th Cir.1989)("the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made."). If the court determines that the plan administrator was right, the analysis ends and the decision is affirmed. *Glazer,* 524 F.3d at 1246-1247; citing *Tippitt v. Reliance Standard Life Insurance. Co.*, 457 F.3d 1227, 1232 (11th Cir.2006).

Considering the evidence in the administrative record, the court is not convinced that the administrator's decision was "wrong." However, for purposes of this opinion, the court will assume that the decision was "wrong," and continue with the court-mandated ERISA analysis.

> *(2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.*

The parties do not dispute that the administrator was vested with discretion in reviewing claims.[3] Thus, the court continues to the third step of the analysis.

*(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).*

Even if the decision of the administrator (i.e., the trustees) was wrong, the court must still affirm that decision if it was reasonable, based on the information the trustees had at the time the decision was made. *See Conkright v. Frommert*, — U.S. —–, 130 S.Ct. 1640, 1651, 176 L.Ed.2d 469 (2010) ("[T]he plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'") (quoting *Firestone,* 109 S.Ct. at 954). *See also White v. Coca–Cola Co.*, 542 F.3d 848, 856 (11th Cir.2008) ("'As long as a reasonable basis appears for [the plan administrator's] decision ..., it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision.'").

---

[3]The NEBF Summary Plan Description states

> The Trustees administer the Plan. They have the right to administer the Plan according to the plan Documents and to make any changes that are within their discretion. They may interpret the rules and terms of the Plan and determine all questions of coverage, eligibility, methods of providing or arranging for the benefits specified in the Plan, and all other related matters to ensure proper administration of NEBF.

NEBF Summary Plan Description 2006 (submitted as doc. 13-6) at 43.

When asked to review the decision that the plaintiff was still employed in the electrical trade and hence ineligible for retirement benefits, the trustees who did so based their decision on years of experience within the electrical trade. The plaintiff never provided the trustees or the Plan any evidence, such as his specific job description or other relevant factual information, to rebut this conclusion. Thus, the only evidence this court has before it is the trustees' decision on appeal, the trustees' statements of what they considered in making their decision, and the plaintiff's opposing statements that his work was not within the electrical trade because he did not use tools or supervise anyone who did.[4]

The law requires that the court, in reviewing any denial of benefits under an ERISA, give deference to the decision of a plan administrator.

> Deference promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than costly litigation. It also promotes predictability, as an employer can rely on the expertise of the plan administrator rather than worry about unexpected and inaccurate plan interpretations that might result from de novo judicial review. Moreover, *Firestone* deference serves the interest of uniformity, helping to avoid a patchwork of different interpretations of a plan, like the one here, that covers employees in different jurisdictions—a result that "would introduce considerable inefficiencies

---

[4] The plaintiff submitted his deposition testimony, taken January 26, 2012, as evidence in support of his opposition to the defendant's motion for summary judgment (doc. 21). That deposition details the plaintiff's past work history as well as his job duties since 2000, maintaining fire and safety systems for his employer. This testimony, even if properly before the court, does nothing to support plaintiff's claim that his work was not within the electrical industry, nor contradict the administrative decision that his work was within that industry.

> in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).

*Conkright*, 130 S.Ct. at 1649. Application of a deferential standard means "that the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" *Firestone*, 489 U.S., at 111, 109 S.Ct. 948.

In considering the plaintiff's appeal of his denial of benefits, the Trustees stated as their conclusion:

> In your case, you are responsible for providing technical assistance on fire protection systems. This is employment that is generally covered by NEBF, and requires the skills you developed on the electrical industry. Accordingly, your employment precludes you from being eligible for a retirement benefit.

NEBF0038.

The plaintiff argues to this court that the administrative record contains nothing to support the determination that the plaintiff's work in 2000 and following years was within the electrical industry. *See* plaintiff's memorandum (doc. 18) at 13-14. The plaintiff argues that because he did not use electrical tools and did not supervise personnel, he was outside the electrical industry classification. *Id.,* at 14. However, such an argument does not render the defendant's conclusion that the job required skills developed in the electrical industry and hence was "employment that is

generally covered by NEBF" unreasonable or arbitrary. NEBF0038. The court has nothing before it which contradicts the trustees' determination, other than the plaintiff's statements that the trustees were wrong.[5] As such, the court must find the decision to be "reasonable." *Oliver v. Coca–Cola Co.*, 497 F.3d 1181, 1195 (11th Cir.2007) ("the plan administrator's decision to deny benefits must be upheld so long as there is a 'reasonable basis' for the decision."), *reh'g granted and partially vacated on other grounds*, 506 F.3d 1316 (11th Cir.2007), *quoting Jett v. Blue Cross & Blue Shield of Ala.*, 890 F.2d 1137, 1140 (11th Cir.1989).

---

[5] In his reply, the plaintiff argues that even if he was working at the same craft or skill as he did in covered employment, that does not translate to working "within the electrical industry." Plaintiff's reply (doc. 23) at 3-6. Such an argument leads to the illogical result that an electrician, working as an electrician, for a non-electrical company would always be outside the electrical industry. Because many different industries hire electricians, the facts before this court are easily distinguishable from the case on which plaintiff relies, *Eisenrich v. Minneapolis Retail Meat Cutters and Food Handlers Pension Plan*, 574 F.3d 644 (8th Cir.2009). The Court is *Eisenrich* considered the Department of Labor regulations, defining "trade or craft" as:

> (A) a skill or skills, learned during a significant period of training or practice, which is applicable in occupations in some industry, (B) a skill or skills relating to selling, retailing, managerial, clerical or professional occupations, or (C) supervisory activities relating to a skill or skills described in (A) or (B).

*Id*., 574 F.3d at 649-650; citing 29 C.F.R. § 2530.203–3(c)(2)(ii). The regulation requires that "the determination whether a particular job classification, job description or industrial occupation constitutes or is included in a trade or craft shall be based on the facts and circumstances of each case." *Id.* (emphasis added). Thus, although the NEBF trustees could not consider only the job classification of plaintiff in determining whether he was still working in a "trade or craft" within the electrical industry, the plaintiff never provided any additional information in contesting their decision. Although plaintiff stated he did not use electrician's tools or supervise others, he failed to provide the NEBF evidence of what he did do. This omission further distinguishes the facts before this court from those before the Court in *Eisenrich*.

Because the decision was reasonable, the court must uphold it as not arbitrary and capricious. *Sharron v. Amalgamated Ins. Agency Servs., Inc..*, 704 F.2d 562, 564 (11th Cir.1983) ("[A] court should enforce a decision of pension fund trustees even though the court may disagree with it, so long as the decision is not arbitrary and capricious.").

> *(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.*

For the reasons set forth above, the court finds reasonable grounds for the trustees' decision existed, and hence must continue with the analysis of whether the trustees operated under a conflict of interest. Neither party briefed this issue, which the court takes as a tacit admission that the trustees did not operate under a conflict of interest.

> *(5) If there is no conflict, then end the inquiry and affirm the decision.*

For the reasons set forth above, the court finds that the decision of the administrator must be affirmed. Specifically, the court finds the defendant's determination to be reasonable and well-supported by the facts it had before it.

## CONCLUSION

For the reasons stated herein, the court is of the opinion that the decision on behalf of the Plan was reasonable and therefore due to be affirmed. Because this case

is before the court on cross-motions for judgment on the administrative record, and the court is of the opinion that no genuine issues of material fact exist, this matter is wholly disposed of by the cross-motions. An Order affirming the decision of the defendant, granting the defendant's cross motion for summary judgment, and denying the plaintiff's motion for partial summary judgment, shall be entered contemporaneously herewith.

**DONE** and **ORDERED** this the 20th day of February, 2013.

INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE